11-2336-cv
Sagaponack Ventures, LLC v. MB Sagaponack Holdings, LLC

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 19th day of June, two thousand and twelve.

PRESENT:

> GUIDO CALABRESI,
> JOSÉ A. CABRANES,
> RAYMOND J. LOHIER, JR.,
> > *Circuit Judges.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

SAGAPONACK VENTURES, LLC,

> *Plaintiff-Counter-Defendant-Appellant*,

> -v.-                                                     No. 11-2336-cv

MB SAGAPONACK HOLDINGS, LLC, MH SAGAPONACK HOLDINGS, LLC,

> *Defendants-Counter-Claimants-Appellees.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| **FOR PLAINTIFF-COUNTER-DEFENDANT-APPELLANT:** | STUART I. FRIEDMAN (Paul S. Grossman, Rajeev Ananda, *on the brief*), Friedman & Wittenstein P.C., New York, NY. |
| **FOR DEFENDANTS-COUNTER-CLAIMANTS-APPELLEES:** | ALAN LEVINE (Jason M. Koral, Jennifer Lerner, *on the brief*), Cooley LLP, New York, NY. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Alvin K. Hellerstein, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court be **AFFIRMED**.

Plaintiff-counter-defendant-appellant Sagaponack Ventures LLC ("Ventures," or the "plaintiff") appeals from the June 24, 2011[1] judgment of the District Court, after a bench trial, in favor of defendants-counter-claimants-appellees MB Sagaponack Holdings LLC ("MB") and MH Sagaponack Holdings LLC ("MH") (jointly, "defendants"). We assume the parties' familiarity with the underlying facts and the procedural history, some of which we reiterate here.[2]

Ventures, MB, and MH are partners in a real estate development project based in the Village of Sagaponack (the "Village"), located within the Town of Southampton, Long Island, New York. The land at issue, a parcel measuring nearly 44 acres bordering the Atlantic Ocean on the southerly side of the parcel, was originally purchased by Ventures in August 2000 for just under $15 million. On March 21, 2005, MB and MH each purchased one-third of the property; each defendant paid Ventures $15 million. MB, MH, and Ventures formed a new company, Sagaponack Realty, LLC ("Realty"), to hold the parcel, and each party took a one-third interest in the company. The Limited Liability Company Agreement governing Realty (the "LLC Agreement") required the parties to seek subdivision approval from the local zoning authority in order to perfect each party's title to its sub-parcel.

The parties thereafter jointly submitted to the Sagaponack Planning Board (the "Planning Board") a plan for subdivision of the property into three approximately equal ocean-front lots, and a

---

[1] The final judgment entered on June 24, 2011, was the fourth "final" judgment entered in the case. On May 19, 2011, the District Court entered final judgment with respect to all claims and counterclaims except Counterclaim Five. On June 13, 2011, the Court entered final judgment with respect to the remaining counterclaim. The District Court amended its order of final judgment on June 21, 2011, to reflect that certain claims and counterclaims had been explicitly withdrawn by the parties. Finally, on June 24, 2011, the District Court amended its June 21, 2011 order. The June 24, 2011 order therefore encompasses each of the three preceding "final judgment" orders.

2

fourth land-locked lot that would include a large unimproved portion. The ocean-front lots, Lots One, Two, and Three, were to be owned by Ventures, MH, and MB, respectively; Ventures was to own Lot Four. The parties were also to own in common the unimproved portion of Lot Four, for which a conservation easement was to be granted to the Peconic Land Trust.

On December 27, 2006, in order to facilitate the grant of the conservation easement, and because Ventures was concerned that granting the conservation easement might cause the Village to impose stricter zoning conditions on Lot One, the parties entered into an amendment to the LLC Agreement (the "Sharing Arrangement" or the "Arrangement") providing Ventures with further protection against an adverse decision of the Planning Board.

In pertinent part, the Sharing Arrangement provides as follows:

Notwithstanding anything to the contrary contained [in the LLC Agreement], if at any time (whether before or after the approval of the Subdivision Plan), any portion of Plot [1] is not permitted by any federal, state, municipal, local or other court, agency, board, commission or other governmental authority or instrumentality to be constructed upon, then the Members hereby agree that the overall impact of such adverse condition (an "Adverse Condition") shall be borne by Plots [3], [2] and [1] in an equal manner.

The Arrangement then provides, "[f]or illustration purposes only," an example of its application:

"[I]f the area of Plot [1] that is subject to such an Adverse Condition is 1,000 square feet, the lot lines shall be redrawn to provide Plot [1] with an additional 666 2/3 square feet from Plot [2] and to provide Plot [2] with an additional 333 1/3 square feet from Plot [3]."

On June 16, 2008, the Planning Board released a Pre-Application Report that imposed a large easement on the westerly portion of Lot One, thereby restricting the size of the buildable square footage on that lot. As partial recompense for the loss of buildable area, the Planning Board agreed to consider reducing a required building "setback" from the eastern boundary of Lot One from 100 feet to 30 feet, thereby permitting the house to be built on Lot One to be located on a more desirable portion of the

---

[2] The facts in this section are taken from the findings of fact made by the District Court after the bench trial.

lot. Shortly thereafter, Ventures requested that MB and MH cede portions of their land to Ventures pursuant to the Sharing Arrangement; MB and MH refused to comply. Further attempts at negotiation with the Planning Board and defendants failed.

On December 4, 2008, Ventures filed the underlying complaint seeking, *inter alia*, a declaratory judgment that Ventures was entitled to take from each of Lots Two and Three an amount of land equal to one-third of its lost buildable area (Count One of the complaint).[3] The defendants interposed eight counterclaims primarily focused on enforcement of various clauses of the contract between the parties.[4]

After discovery, the parties cross-moved for summary judgment, which was granted in part and denied in part by the District Court on March 3, 2010.[5] As relevant here, the Court held that the plaintiff had suffered an "adverse condition" within the meaning of the Sharing Arrangement, but that the "overall impact of the adverse condition" was an issue of fact not capable of resolution on summary judgment.[6] It therefore ordered a trial in order to determine the "overall impact" of the Pre-Application Report on Lot One. The case was tried to the bench over the course of four days in mid-May 2011.

---

[3] Count Two of the complaint sought a declaratory judgment of Ventures' right to move the lot lines on Lot Four. Count Three alleged that the defendants had breached the LLC Agreement by declining to amend the lot lines.

The complaint was amended on July 20, 2009. However, the amendments related only to the measurements of the allegedly lost square footage of Lot One, and are not relevant for our purposes on appeal.

[4] The counterclaims alleged fraud in the inducement relating to the LLC Agreement and the Sharing Arrangement (Counterclaims One and Two); negligent misrepresentation as to the LLC Agreement and the Sharing Arrangement (Counterclaims Three and Four); and four separate claims of breach of contract relating to the alteration of the subdivision plan (Counterclaim Five), improper allocation of expenses as to Realty and between the parties themselves (Counterclaims Six and Seven), and a failure to make required capital contributions (Counterclaim Eight).

[5] The District Court, pursuant to the agreement of the parties, applied Delaware law on summary judgment and at trial. We therefore likewise review this case under Delaware law. *See Celle v. Filipino Reporter Enters. Inc.*, 209 F.3d 163, 175 (2d Cir. 2000) (where the parties agree that the law of a particular state governs their dealings, "[n]o reason of policy warrants [our] departure" from that agreement).

[6] The District Court made several other rulings with regard to the cross-motions for summary judgment. None of those rulings are before us on this appeal.

4

On May 16, 2011, after the completion of the trial, the District Court issued an oral ruling. The Court concluded that the phrase "overall impact of such condition" does not mean lessened acreage, as the plaintiff argued. Transcript of Oral Ruling at 24. Instead, the Court held that the phrase means, as the defendants claimed, "[s]ome compromise of value, some compromise of use or enjoyment, some limitation on building, some change of a material nature in where the house could be sited. Some sacrifice of the house or the appurtenances[ ] that could be developed." *Id.* The Court also held that what constituted such compromise and sacrifice was ambiguous. *Id.* The Court then held, based on the evidence presented at trial, that the plaintiff had failed to prove that there would be an "overall impact of the adverse condition that would restrict his ability to use and enjoy his property, or . . . sell it at a maximum total price," *id.* at 24–25. Accordingly, the Court ruled in favor of the defendants on Count One.[7] Judgment was entered on June 24, 2011.

Ventures appeals the District Court's ruling on Count One, alleging that: (1) the Court erred in its interpretation of the Sharing Arrangement; (2) the Court erred when it determined that the Arrangement was ambiguous; (3) the Court erred in excluding extrinsic evidence of the parties' intent in negotiating and drafting the Arrangement; (4) the Court had insufficient evidence before it to draw conclusions regarding the parties' intent; and (5) given the Court's conclusion that Ventures had suffered an "Adverse Condition" as defined in the Arrangement, the Court's determination that the condition had no overall impact on Lot One was clearly erroneous.

---

[7] The District Court ruled in favor of the plaintiff on Count Two, and the defendants on Count Three. The Court also dismissed those of the defendants' counterclaims that had not already been withdrawn or dismissed. No party contests these rulings on appeal (except insofar as the Court's ruling upon particular claims may derive from its ruling on Count One), and we do not address them. Nor does any party contest the rulings of the District Court on the cross-motions for summary judgment.

DISCUSSION

On appeal from a judgment of the District Court entered after a bench trial, we "review the court's findings of fact for clear error and its conclusions of law *de novo*." *Barclays Capital Inc. v. Theflyonthewall.com, Inc.*, 650 F.3d 876, 890 (2d Cir. 2011) (internal quotation marks omitted). We give particular deference to those factual findings that rest on a credibility determination, as the District Court is in the best position to judge the credibility of witness testimony. *See Krieger v. Gold Bond Bldg. Prods.*, 863 F.2d 1091, 1098 (2d Cir. 1988). We will not deem a finding of fact to be clearly erroneous unless we are left with the "definite and firm conviction that a mistake has been committed." *Id.* (internal quotation marks omitted). We review a District Court's evidentiary rulings in the course of a bench trial for abuse of discretion. *See United States v. Wexler*, 522 F.3d 194, 201–02 (2d Cir. 2008); *see also Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008) (explaining that the term of art "abuse of discretion" includes errors of law).

We have reviewed the record and the appellant's arguments on appeal, and we AFFIRM the June 24, 2011 judgment of the District Court in its entirety.

FOR THE COURT,

Catherine O'Hagan Wolfe, Clerk of Court